# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

GUSTAVO JUAREZ-GALVAN,       )
                             )
            Plaintiff,       )
                             )
        v.                   )        **Case No. 10-4145-RDR**
                             )
UNITED PARCEL SERVICE, INC., )
                             )
            Defendant.       )
_____

## MEMORANDUM AND ORDER

This is an employment discrimination action brought by the plaintiff against his employer, United Parcel Service, Inc. (UPS), pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq. Plaintiff, who is Hispanic, alleges that UPS discriminated against him based upon his ancestry and national origin. This matter is presently before the court upon defendant's motion for summary judgment. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

### I.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a genuine issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Essentially, the

inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. See Anderson, 477 U.S. at 256. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial. Id. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. See id. The court must consider the record in the light most favorable to the nonmoving party. See Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984), cert. denied, 469 U.S. 1214 (1985). The court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

The following facts are considered uncontroverted for the purposes of this order.[1]  Plaintiff immigrated to the United States from Mexico.  He began his employment with UPS in Topeka, Kansas, as a part-time loader/unloader on October 19, 2005.  Plaintiff has been a member of the Teamster's Union since he began his employment with UPS.

Prior to May 2008, in addition to holding a preload position, plaintiff was a part-time "air driver."  This position involved picking up packages from the airport and delivering the packages on Saturdays for UPS.  In May 2008, plaintiff became a seasonal package car driver, which is a position that covers driving routes during the holiday season and for other drivers while they are on vacation.  A driver must first perform as an air-driver before becoming a seasonal driver.  A seasonal driver performs the same work functions as a full-time package driver.

In January 2009, plaintiff notified UPS through a sign-up sheet that he wanted to qualify as a full-time package car driver for UPS.

---

[1] Plaintiff has submitted an affidavit that purports to controvert some of the facts set forth by the defendant.  Many of these efforts must fail for several reasons.  Some of the statements made by plaintiff controvert testimony that he has previously given in a deposition.  Some of the statements lack foundation.  Some appear to be based upon speculation or conjecture.  The court shall discuss some of these matters as we discuss the arguments raised by the parties.

Plaintiff was not available to drive in January 2009 as he was on paid vacation and then FMLA leave from mid-January 2009 through early March 2009 because of an illness in his family.

Plaintiff's 30-day qualification period to become a full-time package car driver commenced on April 7, 2009. During the qualification process, drivers are trained on routes that rotate based on the last route used to qualify a driver. A specific route is not chosen for a particular driver.

The Collective Bargaining Agreement (CBA) between UPS and the Teamsters Union contains the following requirement for full-time drivers: "The employee awarded the job must satisfactorily complete a thirty (30) working day training period." A driver may not be provided the full 30 days depending on his or her prior driving history with UPS as a seasonal and/or air driver, and depending on their prior knowledge and use of the DIAD board, a mobile device used to track the delivery of packages.

Soon after plaintiff began his qualification period, Anthony Streit was assigned as the temporary Business Manager for the UPS Topeka facility, replacing Randy Rosebaugh when Rosebaugh was assigned another job within UPS.

During plaintiff's qualification process, he was assigned four days a week to drive on a full-time basis because there were more senior drivers ahead of him that were driving on Mondays; therefore,

plaintiff was not driving five days a week after he was classified as a driver qualifying to be a full-time driver. He did not drive on Saturdays because, under the CBA, part-time air drivers must be provided the opportunity to drive Saturdays before full-time drivers, which plaintiff was now classified based on his status as a driver qualifying for a full-time driver position. A driver with less seniority than plaintiff was offered the first opportunity to qualify as a full-time package car driver in 2009 because that driver was already driving in the winter months as a seasonal driver. Although plaintiff had more seniority, plaintiff voluntarily chose not to drive the previous winter because of his other non-UPS job obligations. Therefore, the other driver was given the first opportunity to qualify as a full-time driver.

Every driving route is assigned a time in which drivers are expected to complete the route. When a driver completes the route within the allotted time, it is referred to as driving "scratch." A driver may "scratch" but still not qualify if he or she also has service issues.

During his first twelve days of training, plaintiff was over the allowed time for the route each day he drove, ranging from 2.28 hours over to .36 hours over per day. Plaintiff worked through his lunch on at least two occasions; thus attempting to shorten his recorded time on the route, which UPS considers as falsifying

records.  UPS management talked to plaintiff and told him he could not work through his lunch, which plaintiff admitted he was doing.

During his twelve days of qualifying, plaintiff had multiple packages he failed to scan on five separate dates:  April 7, 15, 16, 22 and 24, 2009. Failing to scan a package is when a driver does not enter the package's information into his DIAD board, and UPS loses its ability to track the package. The company no longer has the ability to know whether the package was ever delivered, lost or stolen.

On April 8, 2009, plaintiff had a "missed package." This means the package was properly sheeted and on the package car, but it was not delivered.  During his twelve days of qualifying, plaintiff had three unprocessed "Group 2 Exceptions," which is when a package is not sheeted properly, but the driver fails to pull the package from the car and/or otherwise fails to handle the package correctly.

Plaintiff had one "shipper release exception" on April 17, 2009. A shipper release exception is when the shipper provides UPS with instructions to deliver the package and leave it at the recipient's address, no matter what the conditions may be at the time, but the driver does not deliver the package.

Falsification of records and failure to record packages are both grounds for termination per UPS, and Streit has disqualified drivers for both offenses in the past.

On April 21, 2009, UPS management entered the following on plaintiff's Form 1000: "Reviewed over allowed and quality for the first 2 weeks on training area. Gustavo said he would reduce over allowed and clean up quality issues." On April 22, 2009, UPS management spoke to plaintiff about his service issues, and advised plaintiff he needed to have no further service failures, which was documented in plaintiff's Form 1000.

Plaintiff acknowledged to a fellow UPS driver that he was struggling during his qualification period in getting out on time. Plaintiff acknowledged he had made "13 or 12" mistakes, but claims none of the mistakes "would [ ] jeopardize the service or that UPS has to pay the money back."

Plaintiff classified his mistakes as "strategy mistakes," because it was his strategy to learn the route first and fix those mistakes at the end of his qualification period, but he never communicated with UPS management that this was his "strategy" to qualify as a full-time driver.

This was not the first time plaintiff had service failures as a UPS driver. In the summer of 2008, while performing as a cover driver, his Form 1000 reflects that he had service failures on four separate occasions in June and July.

Missed scans, missed packages, late deliveries, and improper handling of packages by drivers adversely affect the company's

business and are not acceptable to UPS.

Plaintiff was notified on April 25, 2009 by Streit that plaintiff's qualification period was terminated. UPS's stated reasons for ending plaintiff's qualification period in April 2009 were for poor performance and poor service as a package-car driver. Streit made the decision to end plaintiff's qualification period because he did not see progressive improvement in plaintiff's route times, and because of the poor service plaintiff exhibited in the first twelve days of qualifying. Streit checked with UPS Division Manager Johnny Miller before communicating with plaintiff the decision to end plaintiff's qualification period, and Miller agreed with the decision to terminate plaintiff's qualification period after twelve days.

When Streit and Miller decided to end plaintiff's qualification period, neither was aware of any previous allegations of discrimination from plaintiff concerning his national origin or ethnicity. Streit ended plaintiff's qualification period after twelve days because he did not believe plaintiff would qualify on the route plaintiff was driving. He ended plaintiff's qualification period with the understanding that plaintiff could attempt to qualify on a different route as quickly as possible. Plaintiff was offered another opportunity by UPS to qualify as a full-time driver using a different route. Plaintiff, however, declined the opportunity.

On March 20, 2009, K.F., a Caucasian female, was disqualified by Rosebaugh during her attempt to become a full-time driver after twenty-eight days of her qualification period. K.F. was consistently over the allowed time assigned by UPS for the training route she was driving during her qualification period. K.F. also experienced multiple service failures, including missed packages, late delivery of air packages, a missed delivery, failed scans, one customer complaint, and a missing COD envelope.

J.B., a Caucasian male, was the next driver to attempt to qualify for the full-time package car driver position in Topeka after plaintiff failed to qualify. J.B.'s start date was May 4, 2009. J.B. was consistently under the allowed times assigned by UPS for the training route he was driving during his qualification period. J.B. had no service failures entered in his Form 1000 during his qualification period between May 4, 2009 and June 3, 2009. There was only one entry during this entire time in his Form 1000, which stated that J.B. was recertified on delivery scan methods on May 15, 2009.

Plaintiff filed a Charge of Discrimination with the Kansas Human Rights Commission (KHRC) on May 13, 2009. Plaintiff's Charge of Discrimination indicated he charged UPS with discrimination based on his national origin and ancestry, and alleged, "On April 7, 2009, I was promoted to the position of full-time Driver with the condition

that I successfully complete the training process. Subsequently, on April 27, 2009, I was informed by the Manager that the promotion was being rescinded prior to me completing the training process due to alleged mistakes. However, a Caucasian employee, who was not born in Mexico, was placed in the position. Therefore, on this date, I made a complaint to the Manager regarding ancestry and national origin discrimination. However, nothing was resolved."

The KHRC issued Plaintiff a Notice of Right to Sue on June 18, 2010. Plaintiff filed this lawsuit on November 2, 2010, within 90 days of receiving a Notice of Right to Sue.

## III.

The court begins by considering the nature of the claims asserted by plaintiff. In the charge filed with the KHRC, plaintiff raised only the contention that he was denied the promotion to full-time driver due to his ancestry and national origin. In the pretrial order, plaintiff's "Theory of Recovery" is stated as follows: "Plaintiff asserts that he is entitled to recover upon the theory that UPS discriminated and did not promote plaintiff to a full-time package car driver position in violation of Title VII, specifically, by discriminating against him based on his Mexican national origin and ancestry." Nevertheless, in the contentions portion of the pretrial order, plaintiff alleges that "[t]hroughout his employment with defendant, [he] has been subjected to relentless acts of

discrimination on the bases of ancestry and national origin.
Supervisors and co-employees alike harassed and mistreated plaintiff
because of his ancestry and national origin." He points to several
other incidents where he believes he was discriminated against due
to his ancestry and national origin. In his response to defendant's
motion for summary judgment, plaintiff raises some of the incidents
of discrimination noted in the pretrial order, and also asserts facts
constituting retaliation. But, the focus of plaintiff's argument is
upon the alleged discrimination concerning the failure of the
defendant to promote him to the position of full-time driver.

Having reviewed the pleadings and the arguments of counsel, the
court shall focus on the defendant's decision not to promote the
plaintiff to full-time driver. Although plaintiff makes mention of
several acts of discrimination in the pretrial order, he has made
no claim for a hostile work environment or retaliation. Both the
factual issues and the legal issues stated in the pretrial order note
only the claim relating to his promotion to full-time driver. Thus,
the court finds that plaintiff has waived the other claims by failing
to include them and their elements in the pretrial order. See Wilson
v. Muckala, 303 F.3d 1207, 1215 (10th Cir. 2002). The court shall
consider the other matters to the extent they are relevant in
determining whether summary judgment should be entered on plaintiff's
claim that he was denied a promotion to full-time driver by defendant

because of his national origin or ancestry.

IV.

Title VII makes it unlawful for any employer to discriminate against its employees on the basis of race, color, national origin, or religion. 42 U.S.C. § 2000e-2. To prove disparate treatment, a plaintiff must show that the defendant acted with a discriminatory intent or motive. See <u>Watson v. Fort Worth Bank and Trust</u>, 487 U.S. 977, 986 (1988). "A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)." <u>Khalik v. United Air Lines</u>, 671 F.3d 1188, 1192 (10th Cir. 2012). Under <u>McDonnell Douglas</u>, the plaintiff carries the initial burden of establishing a prima facie case of racial discrimination. <u>Adamson v. Multi Community Diversified Servs., Inc.</u>, 541 F .3d 1136, 1145 (10th Cir. 2008). If the plaintiff meets the initial burden of proof, the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for its actions. <u>McDonnell Douglas</u>, 411 U.S. at 802-03. If the defendant presents such a reason, the burden returns to the plaintiff who must show that the defendant's stated reason is a pretext for discriminatory intent. See <u>Elmore v. Capstan</u>, 58 F.3d 525, 530 (10th Cir. 1995).

V.

A.

Plaintiff contends he has shown "abundant evidence" of direct discrimination. This evidence, according to plaintiff, consists of employees and managers of the defendant making fun of his accent and refusing to train him because of his accent.

The defendant initially contends that plaintiff has waived his right to argue direct evidence of discrimination exists in this case because he included only the <u>McDonnell Douglas</u> burden shifting analysis in the pretrial order. The defendant next argues that, even if plaintiff has not waived this argument, the direct evidence relied upon by plaintiff consists of alleged remarks made by non-supervisory level co-workers and alleged comments from supervisors who were not involved in the decision to disqualify plaintiff in April 2009 as full-time driver. Thus, the defendant argues that the alleged comments have no nexus to the adverse employment decision at issue.

The court notes the following alleged comments and statements reflected in the record: (1) a pre-load supervisor, Josh Baxter, said that "Mexicans are pieces of shit;" (2) another pre-load supervisor, Jeff Stithem, once stated his opinion about illegal immigration so that plaintiff could hear it; (3) supervisor William Butschle made comments prior to plaintiff's qualification period about plaintiff's accent and his inability to understand plaintiff; (4) several

comments from co-workers that suggested national origin animus to plaintiff; (5) a statement by Streit to plaintiff outside of work that plaintiff "shouldn't be driving with us at all."

Proof of direct evidence requires evidence that the actual motive behind the adverse employment decision was discriminatory animus. The Tenth Circuit has explained proof of direct evidence as follows:

> Comments in the workplace that reflect personal bias do not qualify as direct evidence of discrimination unless the plaintiff shows the speaker had decision making authority and acted on his or her discriminatory beliefs. Ramsey [v. City & Cnty. of Denver], 907 F.2d [1004] at 1008 [(10th Cir. 1990)]. We also have explained that discriminatory statements do not qualify as direct evidence if the context or timing of the statements is not closely linked to the adverse decision. Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1118 (10th Cir.2007). Furthermore, if the content and context of a statement allow it to be plausibly interpreted in two different ways—one discriminatory and the other benign—the statement does not qualify as direct evidence. Id.

Tabor v. Hilti, Inc., 703 F.3d 1206, 1216 (10th Cir. 2013).

There are several problems with the statements noted by the plaintiff. The comments made by Baxter, Stithem and Butschle do not constitute direct evidence because none of them were involved in the decision to not promote plaintiff to a full-time driver position. Butschle was involved in the training of plaintiff for the full-time position. The comments attributable to Butschle, however, were made prior to plaintiff's qualification period in April 2009. Plaintiff

14

has acknowledged that he had no incidents with Butschle during the three days of training with him in the qualification period. The statements made by plaintiff's co-workers also do not establish intent to discriminate. Moreover, there is no evidence that the decision makers in this case had any knowledge of any of the statements asserted by plaintiff. Finally, the statement made by Streit, who was a decision maker here, is simply too vague to serve as direct evidence of discriminatory intent. "Direct evidence is '[e]vidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1207 (10th Cir. 1999)(quoting Black's Law Dictionary 460 (6th ed.1990)), overruled in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). Given these circumstances, the court finds that the comments noted by the plaintiff may not be considered as direct evidence of discrimination.

B.

Given the absence of direct evidence of discrimination, plaintiff's claim is subject to the burden-shifting framework of McDonnell Douglas. Thus, the court turns to the issue of whether plaintiff has asserted a prima facie case of discrimination.

To establish a prima facie case of national origin discrimination under Title VII, a plaintiff must demonstrate that he (1) belongs to a protected class; (2) suffered an adverse

employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. To state a prima facie case of an illegal failure to promote under Title VII, a plaintiff must show that (1) there was a promotional opportunity available; (2) the plaintiff was qualified and had established availability for the position; (3) despite plaintiff's qualifications, he was not promoted to the position; and (4) the promotional opportunity remained open or was filled. Boese v. Fort Hays State Univ., 814 F.Supp.2d 1138, 1145 (D.Kan.2011)(citing Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1362 (10th Cir. 1997)).

The defendant only disputes the second element of the prima facie case. The defendant contends that plaintiff cannot establish a prima facie case because he cannot prove that he was qualified for the position of full-time driver due to his errors and lackluster driving times. The defendant points out that plaintiff has admitted his mistakes and, thus, by his own admission, cannot establish a prima facie case that he was qualified to be a full-time driver.

The Tenth Circuit has "held that a defendant cannot defeat a plaintiff's prima facie case by articulating the reasons for the adverse employment action because the plaintiff in such a situation would be denied the opportunity to show that the reasons advanced by the defendant were pretextual." E.E.O.C. v. Horizon/CMS Healthcare

Corp., 220 F.3d 1184, 1193 (10th Cir. 2000)(citing MacDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115, 1119-20 (10th Cir. 1991)). "[A] plaintiff is only required to raise an inference of discrimination, not dispel the nondiscriminatory reasons subsequently proffered by the defendant." Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005). "A defendant's evidence regarding an employee's work performance should not be considered when determining whether the employee has made a prima facie case of employment discrimination." Ellison v. Sandia Nat'l. Laboratories, 60 Fed. Appx. 203, 205 (10th Cir.), cert. denied, 540 U.S. 880 (2003). "In analyzing Plaintiff's prima facie case, it is important not to conflate their claim of discrimination with Defendants' proffered explanation." Orr, 417 F.3d at 1149 (citation omitted). The Tenth Circuit has held in such circumstances:

> that a plaintiff may meet the second element of "a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she held her position for a significant period of time."

Bolton v. Sprint/United Management Co., 220 Fed. Appx. 761, 767 (10th Cir. 2007)(quoting MacDonald, 941 F.2d at 1121 (citations omitted)).

Based upon his prior work as an air-driver and a seasonal driver, plaintiff had the necessary qualifications to become a full-time driver. Accordingly, the court finds that plaintiff has satisfied

17

the second element of his prima face case.  See Beaird v. Seagate

Technology, Inc., 145 F.3d 1159, 1166 n. 3 (10th Cir.), cert. denied,

525 U.S. 1054 (1998).

C.

The burden now shifts to the defendant to come forward with a

legitimate, non-discriminatory reason for failing to promote

plaintiff to the full-time driver position. The defendant has

satisfied this light burden by providing evidence that plaintiff was

not promoted to the position of full-time driver due to his poor

performance and poor service as a full-time driver.  The record

shows that plaintiff, during his twelve day period of qualification,

failed to timely finish the route and made multiple service mistakes.

Plaintiff has acknowledged these problems.  Thus, the court finds

that the defendant has provided a legitimate, non-discriminatory

reason for the failure to promote plaintiff.

D.

The burden now shifts back to the plaintiff to demonstrate that

defendant's proffered reason for failing to promote him was a pretext

for national origin discrimination.  Plaintiff makes this showing

"by presenting evidence of 'such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable fact

finder could rationally find them unworthy of credence and hence

18

infer that the employer did not act for the asserted nondiscriminatory reasons.'" McDonald-Cuba v. Santa Fe Protective Services, Inc., 644 F.3d at 1102 (quoting Jaramillo v. Colorado Judicial Dept., 427 F.3d 1303, 1308 (10th Cir. 2005)); see also E.E.O.C. v. C.R. England, Inc., 644 F.3d at 1039 ("A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." (citations and internal quotation marks omitted)). A plaintiff typically makes a showing of pretext with: (1) evidence that the defendant's stated reason is false; (2) evidence that the defendant acted contrary to a written policy; and (3) evidence that the defendant acted contrary to an unwritten policy or practice. Kendrick v. Penske Transp. Servs, Inc., 220 F.3d 1220, 1230 (10th Cir. 2000). Another way a plaintiff may demonstrate pretext is by producing evidence that he was treated differently from similarly situated employees who violated comparable work rules. Id. at 1232. The Court should consider this evidence as a whole. Annett v. Univ. of Kan., 371 F.3d 1233, 1241 (10th Cir. 2004). In the context of a summary judgment motion, the court is not being asked "to conduct a mini-trial to determine the defendant's true state of mind," and it should deny the motion "as long as the plaintiff has presented evidence of pretext. . . upon which a jury could infer discriminatory motive." Pinkerton v. Colorado

<u>Dept. of Transp.</u>, 563 F.3d 1052, 1066 (10th Cir. 2009) (internal quotation marks and citations omitted).

Plaintiff has raised a number of matters that he contends suggest pretext here:  (1) he was not provided thirty days to complete his qualifying period; (2) he was given a more difficult qualifying route than other drivers; (3) he believes that, with additional qualifying time, he would have performed satisfactorily; (4) his mistakes during the qualifying period were the result of the poor training provided by Butschle, who made it clear that he did not like Mexicans; and (5) other similarly situated Caucasian employees, including K.F., a female, had greater numbers of errors in quantity and seriousness and were not disqualified before 30 days had passed.  Based upon complete review of the evidence in this case, the court is convinced that the plaintiff has not come forward with evidence of pretext from which a jury could infer a discriminatory intent behind defendant's decision to disqualify him from the position of full-time driver.

Plaintiff contends that his poor performance during the qualification period was related to the poor training that he received from Butschle who had made previous comments to plaintiff about his English and his accent before plaintiff's qualification period began.  In an affidavit filed along with his response to defendant's motion for summary judgment, plaintiff states: "The five

scanning errors I made were because Bill Butschle failed to and refused to train me due to my accent." This statement, however, directly contradicts his prior deposition testimony on this subject. He testified in his deposition that, during his training, Butschle was "completely different, change[d] his attitude." He further indicated that he no incidents with Butschle during those three days. Thus, plaintiff's statement in his affidavit cannot be used to create a genuine of fact. See <u>Franks v. Nimmo</u>, 796 F.2d 1230, 1237 (10th Cir. 1986). The court believes that this statement should be disregarded because it creates a sham fact issue. <u>Burns v. Bd. of County Comm'rs of Jackson County, Kan.</u>, 330 F.3d 1275, 1282 (10th Cir. 2003)(to determine whether an affidavit is a sham, the court must consider "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain"). Here, plaintiff testified about his training with Butschle in his deposition and the affidavit does not purport to clear up any confusion or claim that it was based upon newly discovered evidence.

Plaintiff contends that he should have been given thirty days to complete his qualification period. He suggests that defendant's failure to do so violated the collective bargaining agreement and

company policy. He argues that this action is indicative of discrimination against him.

The applicable collective bargaining agreement states: "The employee awarded the job must satisfactorily complete a thirty (30) working day training period." Plaintiff interprets this mean that the CBA requires that employees be given thirty days of training. Plaintiff further contends that company policy required the thirty days: "[C]ompany policy and practice is to allow employees to have all 30 days to attempt to complete five days without errors and/or improving."

The court finds no support for plaintiff's argument. The CBA does not require the defendant to provide an employee with thirty days of training before promotion to the position of full-time driver. Rather, the CBA requires only that a driver must complete 30 days of training prior to promotion. Plaintiff has failed to provide any support for his contention on the company policy concerning training. It must be considered mere speculation. See Bateman v. United Parcel Service, Inc., 31 Fed.Appx. 593, 597-98 (10th Cir. 2002)(disregarding UPS driver's testimony that co-workers were treated more favorably as either speculative or based on hearsay).

Plaintiff has also suggested that there were other irregularities in his qualification period. He contends that the CBA was not followed by the defendant because they allowed a driver

with seniority to qualify as a full-time driver in January 2009 before plaintiff was given the opportunity. Plaintiff suggests that he was "ready, willing and able" to begin his training in January 2009 when another driver with less seniority was allowed to begin qualifying. The undisputed record before the court shows that plaintiff signed up to become a full-driver in January 2009. He then went on paid vacation and FMLA leave from January 2009 through mid-March 2009. The other driver was allowed to attempt to qualify while plaintiff was on leave. Once plaintiff returned, he was then allowed to attempt to qualify. The defendant's business records reflect that plaintiff was on leave from January to mid-March, and plaintiff has offered nothing to counter those records. Thus, the evidence shows that another employee with less seniority was allowed to begin training because plaintiff was not available. The court fails to find that such facts constitute any showing of discrimination by the defendant.

Plaintiff's next argument is related to his last argument. He contends he was given a more complex, difficult route to qualify on than other drivers. He suggests that after the employee with less seniority was allowed to bypass him, he was assigned to the "most difficult route," one where it is "almost impossible to qualify." Once again, there is no support for this contention in the record. As noted above, there is no evidence to support the contention that

the defendant allowed another employee to "bypass" the plaintiff and, thus, allow him to qualify on a much easier route. The uncontroverted facts show that drivers are trained on routes that rotate based on the last route used to qualify a driver. A specific route is not chosen for a particular driver. The route given plaintiff was based upon the timing of his qualification. There are no facts that suggest otherwise. Moreover, there is no evidence in the record to even support plaintiff's subjective belief that the route was the most difficult. Plaintiff does not offer any foundation providing any confidence in the accuracy of this observation. He provides no basis for a claim that he was given this route due to the defendant's bias against Hispanics. Finally, even accepting that the route might have been difficult, the next employee who attempted to qualify on that route was able to drive it under the times allowed by the defendant and did so without any service errors.

Plaintiff points to the treatment of other employees as evidence of pretext by the defendant. He contends that other Caucasian employees were not disqualified prior to the end of 30 days even though they had a greater number of errors both in quantity and seriousness. Specifically, he notes that K.F., a Caucasian female, was allowed to continue to attempt to qualify for 28 days even though her driving record was much worse than his. He has further noted in

his affidavit that K.F. "self-disqualified" at the end of 28 days.

The court finds no support in the record for plaintiff's contention that other Caucasian employees were not disqualified prior to the end of 30 days even if they had a worse record than plaintiff during the qualifying period. Plaintiff has not named any individual, other than K.F. who the court will discuss later in the order, with a worse record than he had during the qualifying period. Without any evidence to support this bald contention, the court does not find that it presents pretext for discrimination.

Moreover, the court is not persuaded that the treatment of K.F. provides any basis for pretext here. Both plaintiff and K.F. were disqualified by the defendant in less than 30 days. The court does not find any discriminatory treatment in disqualifying plaintiff in 12 days while allowing K.F. an additional 16 days. Both employees were disqualified prior to the end of the 30-day period. There is no evidence to support plaintiff's statement in his affidavit that K.F. disqualified herself. He has provided no basis for this fact and it is contrary to the business records offered by the defendant in this case. The opinion testimony offered by plaintiff concerning K.F.'s employment and subsequent "self-disqualification" is so lacking in details and foundation that it fails to establish relevant disparate treatment as to give rise to a genuine issue of material fact and undermine the good faith beliefs of those

supervisors making the decisions to disqualify plaintiff in 12 days and disqualify K.F. in 28 days.  See Salguero v. City of Clovis, 366 F.3d 1168, 1178 (10th Cir. 2004).

Plaintiff contends that he was improving and, if he had been allowed to complete the 30-day period, he would have qualified.  He has also indicated that the employees of the defendant understood that he would qualify if he had been given the chance.  Plaintiff further contends that the defendant "has not presented any evidence as to why it cut [his] training at twelve days and did not allow him to continue to train or learn the job for the next eighteen days."

The uncontroverted evidence before the court shows that plaintiff was unable to drive the route in the time required by the defendant.  He did make some improvement in his driving times, but he was never able to complete the route in the designated driving time.  In addition, plaintiff committed repeated delivery errors during his qualifying period.  The court is unable to conclude that the decision to disqualify plaintiff at the end of 12 days constitutes pretext for discrimination.  Streit testified that he believed it was best to disqualify plaintiff and have him move to another route where it would be easier for him to qualify.  Plaintiff, however, refused the second opportunity.  The court is not concerned whether Streit's judgment was right or wrong, or even fair.  Young v. Dillon Cos., 468 F.3d 1243, 1250-51 (10th Cir. 2006).  Rather, the court must

only consider if the defendant's decision was a pretext for discrimination. "It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." Furr v. Seagate Tech. Inc., 82 F.3d 980, 988 (10th Cir. 1996). In general, "'an employer's exercise of erroneous or even illogical business judgment does not constitute pretext.'" C.R. England, Inc., 644 F.3d at 1044 (quoting Reynolds v. School Dist. No. 1, Denver, Colo., 69 F.3d 1523, 1535 (10th Cir. 1995)). A court is "not to act as a super personnel department that second guesses employers' business judgments." Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Services, 165 F.3d 1321, 1330 (10th Cir.) (quotation omitted), cert. denied, 528 U.S. 815 (1999). Plaintiff must show the defendant's business judgment here was so questionable, idiosyncratic, or indefensible that a fact finder could reasonably find it to be a pretext for illegal discrimination. Plaintiff's arguments and evidence fall far short of this necessary showing. The defendant is in the business of delivering packages in a timely and accurate manner. Plaintiff was not able to do either and the court cannot impose its judgment on the decisions of the defendant.

Plaintiff has raised several incidents where he believes that he was treated unfairly by the defendant. The court shall examine those incidents to determine if they serve to offer any support for

27

his allegation of pretext by the defendant. Plaintiff has raised two incidents that occurred after he was disqualified in April 2009 as a full-time driver as evidence of pretext. One of these incidents occurred in June 2010 and the other occurred in November 2009. Each incident involved a supervisor who was not involved in the decision to disqualify plaintiff from the full-time driver position in April 2009. Given these circumstances, the court finds that neither incident has any nexus to the adverse employment decision in this case. Thus, they are not relevant here.

Plaintiff has pointed to some other incidents where he felt he was mistreated. However, there is no evidence that the two individuals who made the decision to disqualify the plaintiff from the full-time driver position in April 2009, Streit and Miller, had any knowledge of these incidents. Accordingly, Streit and Miller could not have been influenced by these matters.

In sum, plaintiff has not met his burden to demonstrate that "the employer's proffered explanation is unworthy of credence." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1166 (10th Cir. 2007). The defendant is entitled to summary judgment on the Title VII claim asserted by plaintiff.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. # 62) be hereby granted. Judgment shall be entered for the defendant and against the plaintiff on all claims.

28

**IT IS SO ORDERED.**

Dated this 8th day of April, 2013, at Topeka, Kansas.

*s/Richard D. Rogers*
United States District Judge
